## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

DIAMOND SPORTS, LLC d/b/a RIMAS
SPORTS,

               Plaintiff,

v.

MAJOR LEAGUE BASEBALL PLAYERS
ASSOCIATION,

               Defendant.

Case No.:

## VERIFIED COMPLAINT

Plaintiff Diamond Sports, LLC d/b/a Rimas Sports ("Rimas Sports" or "Rimas"), files the following Verified Complaint against the Major League Baseball Players Association ("Defendant" or the "MLBPA") and alleges as follows:

### INTRODUCTION

1.    *Por nosotros, para nosotros.*[1]  That was the vision Noah Assad ("Mr. Assad"), Jonathan Miranda ("Mr. Miranda"), and Benito Martinez-Ocasio a/k/a Bad Bunny ("Mr. Martinez" or "Bad Bunny") had for Rimas Sports when they founded it in 2021.  Their goal was to build a sports marketing and management firm focusing on bringing greater representation to the Latin American community in the world of sports.  As a hotbed for Major League Baseball ("MLB") recruitment, Latin America has an abundance of talent, but few homegrown agencies.  Rimas Sports would change this.  At Rimas Sports, players are represented by an agency founded by people who look like them; who know where they've come from and how to get where they want to go; who not only believe in them but empower them; and who will help them build lasting

---
[1]  "For us, By Us."

legacies for themselves, their families, and their communities.  Rimas Sports set out to change the landscape of the Latin American sports agency market, and it did just that.

2.      In three short years, Rimas Sports signed some of the most exciting up-and-coming individual talent in MLB, including the Mets' Francisco Alvarez and Ronny Mauricio, Giants' first baseman Wilmer Flores, Rockies shortstop Ezequiel Tovar, the Reds' Santiago Espinal, the Nationals' Eddie Rosario, and top Dodgers prospect Diego Cartaya.  Player excitement about the agency, particularly in Latin America, was evident, and since its inception, Rimas Sports has added over 70 players to its roster and currently represents 68 players, 14 of which play in the MLB and the rest in minor league baseball ("MiLB").  But Rimas Sports' quick success was not welcome news to everyone in the sports agency world.

3.      Sports agency is a zero-sum game.  As Rimas Sports added players from Latin America, its competitors lost players in the most important recruiting territory in baseball. Agencies who long dominated the recruitment of Latin American players saw their positions threatened. The "good ole boy" order of baseball sports agency, where the MLBPA combined with its favored, more established player agencies to control player opinion and solidify support for MLBPA's initiatives and leadership positions, was being put at risk, as these Puerto Rican "outsiders" were disrupting baseball sports agency order too much, too fast.  This was something that the MLBPA and Rimas Sports' competitors would not allow.

4.      In late April 2022, the MLBPA set out to put a stop to Rimas Sports.  For nearly two years, the MLBPA scrutinized the agency in a discriminatory, biased, and pre-determined investigation, all designed to put Rimas Sports permanently out of business.  From late April 2022 through February 2024, the MLBPA worked to eliminate Rimas Sports from the sports agency market, intentionally preventing certified agents from working with Rimas Sports in any capacity.

2

Then, on April 10, 2024, the MLBPA issued a Notice of Discipline to Rimas Sports' agents, William Arroyo ("Mr. Arroyo"), Mr. Assad, and Mr. Miranda decertifying Mr. Arroyo, while also preventing Mr. Assad and Mr. Miranda from even applying to become certified MLBPA agents, and categorically prohibiting all "MLBPA Certified Agents from working for or associating themselves with Mr. Arroyo, Mr. Miranda, and Mr. Assad or any entity owned by or affiliated with Mr. Arroyo, Mr. Miranda, and Mr. Assad including, but not limited to, **Rimas Sports, Diamond Sports LLC, and Rimas Entertainment LLC**[.]"   (*See* **Exhibit A**, Notice of Discipline) (emphasis added).[2]   Adding to the gravity of this harm, the MLBPA put these restrictions into immediate effect.

5.     The MLBPA's April 10, 2024, prohibitions are extraordinary and unprecedented. By blanketly prohibiting any MLBPA certified agents from affiliating with Rimas Sports and Rimas Entertainment (collectively, the "Rimas Companies") in any capacity, the MLBPA has effectively placed a death-penalty sanction on Rimas Sports as an agency and prohibited Rimas Entertainment, which is not in the sports agency business and has never had a MLBPA Certified Agent, from contracting with clients who may wish to secure branding, sponsorship or endorsement deals.  These restrictions extend well beyond the scope of the MLBPA's authority to regulate its agents.

6.     The MLBPA's actions have caused and will continue to cause the Rimas Companies irreparable harm by:  (1) depriving Rimas Sports of the ability to hire or associate with any other MLBPA Certified Agents, effectively eliminating Rimas Sports as an agency; (2) causing Rimas Sports' prospective MLBPA certified agents to terminate negotiations with Rimas Sports by instructing the MLBPA certified agents to not associate with Rimas Sports;

---

[2]     The April 10, 2024, Notice of Discipline will be filed under seal concurrently herewith.

(3) interfering with the Rimas Companies' non-MLB employment agreements and specifically third-party agreements for sponsorships, endorsements, and marketing deals with teams and third-parties; (4) injuring the Rimas Companies' goodwill, brands, and reputation in the entertainment and sports agency industries; and (5) interfering with the Rimas Companies' private right to contract with third-parties wholly unrelated to the MLB or the MLBPA by blanketly preventing any MLBPA certified agent from working with or associating with the Rimas Companies in any capacity.  These harms are real, imminent and have already been felt since the ban imposed by the MLBPA on Rimas Sports is already in effect.  Without immediate injunctive relief, the MLBPA's disciplinary actions will continue to cause Rimas Sports and Rimas Entertainment to suffer irreparable harm.

7.      Rimas Sports brings this action to level the playing field and clarify the boundaries of the MLBPA's authority.  Plaintiff seeks a judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, declaring the MLBPA—through its grossly overbroad prohibitions—has exceeded the scope of its statutory authority under the National Labor Relations Act ("NLRA").  The MLBPA's actions lack any legal basis under the NLRA and the MLBPA's own regulations, which primarily govern collective bargaining in baseball.  Specifically, the MLBPA does not have the authority or ability to prohibit certified agents from representing players in matters unrelated to their MLB employment agreements or from associating with non-regulated entities like the Rimas Companies.  In addition, Rimas Sports brings claims for tortious injury to its business interests under Article 1536 of the Puerto Rico Civil Code of 2020, and for tortious interference with contract.

8.      Without a clear judicial determination and immediate injunctive relief, the MLBPA's actions and blanket prohibitions will continue to cause Rimas Sports and Rimas

Entertainment irreparable harm.  Accordingly, Plaintiff respectfully requests that this Court: (i) enter an order in Plaintiff's favor on each of its claims, and (ii) issue a temporary restraining order and preliminary injunction enjoining the MLBPA and its servants, agents, and employees, and all persons in active concert or participation with them, from taking any action to prohibit persons who hold MLBPA certifications from working for, affiliating, or associating themselves with Diamond Sports LLC d/b/a Rimas Sports and/or Rimas Entertainment, LLC, or any entity owned by or affiliated with the Rimas Companies or their owners, until this Court has adjudicated Plaintiff's claims.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, § 2 of the National Labor Relations Act (NLRA), 29 U.S.C. § 152, and § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, because this is a suit against a labor organization and Puerto Rico is a "district in which [the MLBPA's] duly authorized officers or agents are engaged in representing or acting for employee members" and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

10.      This Court also has supplemental jurisdiction over the common law claims in this action because they are so related to claims within this Court's original jurisdiction that they form part of the same case or controversy.

11.      Venue is proper in this District under § 301 of the LMRA because the United States District Court for the District of Puerto Rico has jurisdiction and under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the action occurred in this District.

## PARTIES

12.     Plaintiff Diamond Sports, LLC d/b/a Rimas Sports is a Puerto Rico limited liability company with a principal place of business at 644 Fernández Juncos Avenue, Suite 501, San Juan, Puerto Rico 00907.

13.     Defendant Major League Baseball Players Association is an unincorporated New York association with a principal place of business at 12 E 49th Street, New York, New York 10017.  The MLBPA regularly represents players that reside in the District of Puerto Rico.

## FACTS

### I.     The Major League Baseball Players Association

14.     Major League Baseball consists of thirty different clubs, each with a farm system consisting of four minor league baseball affiliates.  Each team has an "active roster" limit ranging from twenty-eight to thirty players.  As a result, the available pool of MLB players is relatively limited at approximately 2,700 players.

15.     The demographics of the MLB are diverse.  But Latino and Hispanic players make up over thirty percent (30%) of MLB's players and this number is expected to grow.  *See* Anthony Castrovince, *Overall MLB diversity up; effort to increase Black participation continues*, MLB.COM (Apr. 14, 2023).

16.     Virtually all MLB players are represented by certified agents, the majority of which work for or are associated with entertainment and sports agencies.  These certified agents are allowed to represent players when they negotiate their club contracts under the MLBPA Regulations.  But they also commonly represent players to negotiate marketing, sponsorship, investment, and other endorsement deals.

17.     The MLBPA is a labor union under § 2 of the NLRA.  29 U.S.C. § 152.  The MLBPA is the exclusive collective bargaining representative for all current and prospective MLB and MiLB players, managers, and coaches.

18.     The MLBPA's authority to collectively bargain on behalf of MLB players is derived from Section 9(a) of NLRA which allows the MLBPA and other players associations to "monopolize the representation of all employees in the bargaining unit."  29 U.S.C. § 159. Section 9 of the NLRA provides, in relevant part:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit *for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment*.

29 U.S.C. § 159(a) (emphasis added).  Under the NLRA, employers—MLB and MiLB teams— may not bargain with any agent other than one designated by the union.

19.     A union may delegate some of its exclusive representational authority on terms that serve union purposes.  The decision whether, to what extent, and to whom to delegate that authority lies solely with the union.

20.     The MLBPA regulates Player Agents (referred to herein as an "Agent" or "Agents").  (*See* **Exhibit B**, MLBPA Regulations Governing Agents and March 27, 2023, Memorandum detailing the 2023 Amendments (collectively the "Regulations")).

21.     The Regulations expressly state they were promulgated for the purpose of "afford[ing] each Player the opportunity to make better-informed decisions about his choice of [a] certified Player Agent" and ensure that those Agents act in the best interests of the Players they represent.  (*See* Ex. B, § 1(A), p. 1).

22.     Under the Regulations, the MLBPA has the sole authority to certify an Agent. (Ex. B, § 4, pp. 9-24).  Importantly, the definition of "Player Agent" and "Expert Agent Advisor"

expressly refers to individuals who are certified by the MLBPA.  The Regulations state that "[t]he MLBPA will certify *only individuals* as Player Agents or Expert Agent Advisors *and not firms or business entities* …."  (Ex. B, § 2(C), pp. 4-5 (emphasis added)).

23.     The Regulations delineate the type of conduct requiring certification by the MLBPA:

### Section 3 – Conduct Requiring Certification as a Player Agent or Expert Agent Advisor

No person is authorized to engage in, or attempt to engage in, any of the conduct described in either Section 3(A) [Negotiation, Administration or Enforcement of Player Agreements and Rights] or 3(B) [Recruitment or Maintenance of Players as Clients] without first obtaining the appropriate certification from the MLBPA as a Player Agent or Expert Agent Advisor.

(Ex. B, § 3, pp. 8-9).

24.     Section 3(A) of the Regulations provides that negotiations surrounding Player Agreements are limited to negotiations with MLB and MiLB clubs concerning a Player's Major League Uniform Players Contract with that club.  (Ex. B, § 3(A), pp. 8-9).

25.     Section 3 of the Regulations state that "[n]o person is authorized to engage in, or attempt to engage in, any of the conduct described in either Section 3(A) or 3(B) without first obtaining the appropriate certification from the MLBPA as a Player Agent or Expert Agent Advisor."  (Ex. B, § 3, p. 8).

26.     Section 4(B) of the Regulations provide that the MLBPA only certifies *individuals* as Player Agents.  The Regulations do not certify agencies, corporations or other legal entities:

### Only Individuals Can Be Certified

All Applications must be signed by and filed on behalf of a single individual Applicant.  The MLBPA will not accept any Application filed by, nor will it certify as a Player Agent or Expert Agent Advisor, any company, partnership. Corporation, or other artificial legal entity. . . .  (Ex. B, §4(B), p. 11).

27.     As entities, the Rimas Companies cannot hold a MLBPA Player Agent or Expert Agent Advisor certification.

28.     Under the Regulations, for a Player Agent to represent a player, the player must execute a Player Agent Designation ("PAD") form with the MLBPA.

29.     PADs may be transferred by players from one certified agent to another.

## II.     The Origins of Rimas Sports

30.     Rimas Sports was founded in 2021 by Noah Assad, Jonathan Miranda and multi grammy-award winning recording artist Benito Martinez, also known as Bad Bunny (collectively, the "Founders").

31.     Prior to entering the sports universe, Mr. Assad and Mr. Miranda, among others, founded Rimas Entertainment, LLC, to produce, promote, market and distribute music and entertainment products and services by Bad Bunny and other artists and clients signed to the company. Through their skill and business acumen, Rimas Entertainment grew into a powerhouse in the music industry. In addition to Bad Bunny, Rimas Entertainment represents Arcángel, Eladio Carrión, Jowell & Randy, Mora and others. Mr. Assad has also received numerous accolades in the music industry for the work of Rimas Entertainment, including being named Billboard's Music Executive of the Year in 2023.[3]

32.     The Founders, following the successful formula of their music venture, decided to focus their sports agency on Latin American athletes, initially baseball players.

---

[3]     Mr. Assad and Mr. Miranda own other entities that have significant prominence in the sports and entertainment space, such as: Habibi, LLC, which manages international superstars such as Sebastián Yatra and Grupo Frontera; Noah Assad, LLC, which is Puerto Rico's largest concert promoting company, and the Cangrejeros de Santurce basketball team in the Puerto Rico Superior Basketball League. They also started a non-profit, Fundación Rimas, which supports multiple sports and music education programs in Puerto Rico.

33.     In the fall of 2021, Mr. Assad, Mr. Miranda, and Mr. Martínez-Ocasio made plans to launch the sports agency, which eventually became known as Rimas Sports.

34.     One of Rimas Sports' goals was to not only provide unparalleled representation to athletes, and specifically baseball players, regarding their club contracts, but to also provide and amplify opportunities for Latin American players in branding opportunities, sponsorships, and endorsements.   Using their connections and phenomenal success in the music industry, Rimas Sports is effective in cross-selling opportunities to baseball players, thereby opening new revenue streams for their clients and maximizing their brands and value outside the baseball field.

35.     Mr. Assad took on the role of managing the operations of Rimas Sports and overseeing cross-selling opportunities while Mr. Miranda oversaw baseball-management side of the business.   Mr. Martinez-Ocasio was and remains a semi-passive investor.

36.     In January 2022, Rimas Sports hired MLBPA certified agent Mr. Arroyo and various support personnel.

37.     Rimas Sports' approach set it up for success because its founders understood the players' cultures, environments, and backgrounds.   Latino players make up over thirty percent of the MLB's players, but there has never been a large-scale Puerto Rico-based sports agency that was created to specifically assist Latin American players.

38.     It also was an opportune time for Rimas Sports to enter the market.   Some Agents were experiencing difficult off-seasons, and the number or size of contracts expected by top-tier players in some instances has declined.   As a result, many Players were (and currently are) looking for new representation, especially if that representation can provide additional opportunities to generate income, build their brands and maximize their value.

39.     Rimas Sports quickly developed a reputation for success with marketing, endorsement, and sponsorship deals, which is an area where MLB players have fallen behind compared to other sports.[4]

40.     For example, Francisco Álvarez, a catcher for the New York Mets, appeared in the music video for the song "RKO" by Rimas Music artist Eladio Carrión.  Álvarez and Colorado Rockies' shortstop Ezekiel Tovar were also featured in "The Latin Swing:  From Music to Sports," a Billboard Latin Music Week forum that also featured Carrión and renowned artist Arcángel, also a Rimas Music artist.  As Rimas Sports continued to grow, there was an increase in Player interest.

41.     And because Rimas Sports had strong ties to the Puerto Rican community, Rimas Sports was also well positioned to compete to represent Puerto Rican baseball players.

42.     Rimas Sports' efforts ultimately paid off, resulting in more than seventy players joining its roster.  In just a year and a half, some of the most exciting up-and-coming talent in the MLB joined Rimas Sports, including Mr. Alvarez, Mr. Tovar, shortstop Ronny Mauricio, San Francisco Giants first baseman Wilmer Flores, Cincinnati Reds infielder Santiago Espinal, the Washington Nationals outfielder Eddie Rosario, and top Los Angeles Dodgers prospect Diego Cartaya.

## III.     The MLBPA Investigation and Decision

43.     Rimas Sports' success obviously came at the expense of its competitors.  Some of those competitors accused the sports agents that worked for Rimas Sports of violating the

---

[4]     For example, in 2023, the top fifteen MLB players made a total of $105 million in endorsements, compared to $280 million and $349 million for the top fifteen athletes in soccer and basketball, respectively.  The $105 million figure includes Shohei Ohtani's endorsement earnings of $67 million in 2023, grossly inflating the number.  Notably, despite the high prevalence of Latin players in the MLB, only five Latin players made the top-fifteen list, with endorsements totaling an estimated $7.5 million.  *See* Badenhausen, Kurt, *MLB's Highest-Paid Players 2024:  Ohtani on Top Despite $2M Salary*, SPORTICO (Mar. 20, 2024); *see also* Chawaga, Peter, *Ronald Acuna Jr.'s Controversial Deal With Rimas Sets New Tone for MLB*, FORBES (Apr. 23, 2024).

Regulations, prompting an investigation into the existing certification of Mr. Arroyo, and the requested certification of Mr. Assad and Mr. Miranda.

44.     For nearly two years – from late April 2022 through February 2024 – the MLBPA investigated Mr. Arroyo, Mr. Assad, and Mr. Miranda.   Based on information and belief, the investigation intended to have a predetermined outcome: putting Rimas Sports out of business, even if that meant exceeding the MLBPA's regulatory authority.

45.     For example, nearly a year *before* it allegedly completed its investigation and issued its Decision, the MLBPA learned that attorneys Oswaldo Rossi, John Baldivia, and Jimmy Barnes of Rossi PC law firm from Pasadena, California would be seeking to be certified agents and associated with Rimas Sports.   Mr. Rossi and his colleagues are well-known entertainment attorneys practicing in California, who represent a number of athletes, artists and celebrities, including Ronald Acuña of the Atlanta Braves.   (*See* **Exhibit C**, affidavit of Oswaldo Rossi, ¶¶ 2-3).

46.     In a letter dated September 18, 2023, to Rossi LLC, Assistant General Counsel Robert Guerra[5] stated:

> In making judgments about whether to allow applicants to pass their background investigations, the MLBPA takes into account the information that the applicants disclose in their applications and the statements they make to the MLBPA.   In interviews with the MLBPA, you have each confirmed that your intentions are to start your baseball representation business under the name Rossi LLC, and *that you have no present plan to merge with Rimas Sports, represent Rimas Sports clients, or share or receive fees from Rimas Sports for the representation of Rimas Sports clients*.
>
> Based on the above representations, and in accordance with Sections 4(M) and 5(B)(12) of the Agent Regulations, the MLBPA has determined that in the event that you are certified (after passing the agent exam and submitting the proper player designation(s) to the MLBPA), *your certifications will be conditioned on your agreement not to work for or with Rimas Sports, represent Rimas Sports clients*

---

[5]     Mr. Guerra issued the final Decision.

> ***(or clients recruited to your agency by Rimas Sports or any of its principals or employees), and/or enter into a fee sharing arrangement with Rimas Sports, any Rimas Sports employee, agent, principals, and/or affiliated entity, without the prior, written authorization of the MLBPA***.  Please note that under Sections 4(M)(2) and 5(A)(12) of the Agent Regulations, the MLBPA reserves the right to direct you to provide it with information necessary to verify your compliance with this agreement.  Upon your acceptance of this condition you will be cleared to take the Agent Exam.

(*See* **Exhibit D**, September 18, 2023, MLBPA Ltr. to Rossi LLC (emphasis added)).

47.    Mr. Rossi, Mr. Baldivia, and Mr. Barnes ultimately had to agree to the MLBPA's terms in order to take the agent certification exam.  This unprecedented condition imposed on them is not part of the MLBPA Regulations.  (Ex. C, ¶ 5).

48.    Notably, as of September 18, 2023, the date of the letter, no discipline had been imposed on Mr. Arroyo, the only certified agent at Rimas Sports.  Mr. Arroyo held his MLBPA certification under no restrictions and was not the subject of any discipline.  But the MLBPA was already taking steps to prevent Rimas Sports from bringing on certified agents or having other certified agents represent its existing and future clients.  (*See* **Exhibit D**.)

49.    Mr. Arroyo continued to serve the interests of Rimas Sports clients for almost six months, but on April 10, 2024, the MLBPA issued its Notice of Discipline in which it revoked Mr. Arroyo's MLBPA agent certification and denied the applications for Mr. Assad and Mr. Miranda.[6]  (Ex. A).  The Notice of Discipline also "***prohibits MLBPA Certified Agents from working for or associating themselves with Mr. Arroyo, Mr. Miranda, and Mr. Assad or any entity owned by or affiliated with Mr. Arroyo, Mr. Miranda, and Mr. Assad including, but not***

---

[6]    Mr. Arroyo, Mr. Assad and Mr. Miranda will appeal the Notice of Discipline.  However, since the MLBPA only certifies (or decertify) individuals as Player Agents, not firms or entities, Rimas Sports is not part of the appeal or arbitration process of the MLBPA.

***limited to, Rimas Sports, Diamond Sports LLC, and Rimas Entertainment LLC until and unless they have obtained MLBPA certification.***" (hereinafter the "Prohibition").  (Ex. A, ¶ 334, p. 60).

50.     By issuing this Prohibition, the MLBPA took the extraordinary and unprecedented step of essentially placing a death penalty on Rimas Sports and Rimas Entertainment that extends well beyond the scope of the MLBPA's regulators authority.

51.     As set forth above, the MLBPA's Prohibition results in *any* MLBPA Certified Agent from working for or associating themselves with Rimas Sports or Rimas Entertainment, including any other affiliated entity or any future entity to be created or formed by Mr. Miranda or Mr. Assad.

52.     If this draconian Prohibition was not enough, the MLBPA compounded the injury by putting the Prohibition into immediate effect.[7]

53.     Also on April 10, 2024, the MLBPA issued an order to Michael Velazquez, an agent Rimas Sports had been considering hiring or adding as an affiliate.  This order guaranteed that Rimas Sports would not be able to operate with a certified agent.  In an order, titled "Order to Show Cause Why [Mr. Velazquez] Should Not Be Suspended," the MLBPA stated, in relevant part,

> **[T]he MLBPA has separately determined that it will suspend your certification as a Player Agent for as long as you are employed by or otherwise associated with Bill Arroyo, Jonathan Miranda, Noah Assad, or any entity owned by or affiliated with them including, but not limited to, Rimas Sports.**  This decision is based on the MLBPA's determinations that Mr. Arroyo, Mr. Miranda, and Mr. Assad have engaged in multiple serious violations of the Regulations Governing Player Agents the MLBPA is not making your suspension effective immediately.  Instead, this suspension will be held in abeyance until **May 10, 2024**, to provide you with an opportunity to disassociate yourself from Mr. Arroyo, Mr. Miranda, Mr. Assad and

---

[7]     The Regulations state that the decision to decertify an agent will usually be stayed pending an appeal pursuant to the MLBPA Regulations.  Here, that request was denied.  Not only is it irregular, it has the effect of placing Rimas Sports out of business until the appeal is resolved.

any entity owned by or affiliated with them including, but not limited to, Rimas Sports.

Additionally, you have until **May 10, 2024**, to notify the MLBPA that you have disassociated yourself from Mr. Arroyo, Mr. Miranda, Mr. Assad and any entity owned by or affiliated with them including, but not limited to, Rimas Sports.  ***If you fail to disassociate yourself from Mr. Arroyo, Mr. Miranda, Mr. Assad and any entity owned by or affiliated with them including, but not limited to, Rimas Sports by May 10, 2024, then your suspension will automatically become effective on May 11, 2024 and will remain in effect for as long as you are associated with Mr. Arroyo, Mr. Miranda, Mr. Assad and any entity owned by or affiliated with them including, but not limited to, Rimas Sports.***

(*See* **Exhibit E**, Order to Show Cause (Velasquez), dated April 10, 2024 (emphasis added)).

54.     On May 9, 2024, under pressure from the MLBPA, Michael Velasquez notified Rimas Sports of his disassociation, writing,

Per the letter dated April 10, 2024[,] from the MLBPA, in which the MLBPA informed me that if, on May 10, 2024, I remain employed by or otherwise associated with Bill Arroyo, Jonathan Miranda, Noah Assad or any entity owned or affiliated with them including, but not limited to, RIMAS Sports, my certification as a Player Agent will be suspended.  ***As a [r]esult, I am left no alternative, but, to terminate my services with RIMAS Sports*** effective May 10, 2024.

(*See* **Exhibit F**, Email from M. Velasquez to Rimas Sports, dated May 9, 2024 (emphasis added)).

55.     In addition to prohibiting MLBPA certified agents from working for, associating with, or affiliating with the Rimas Companies, the MLBPA also took steps to ensure MLB and MiLB clubs and their affiliates cut off all ties to the Rimas Companies as well.

56.     On April 28, 2024, in a leaguewide email, the MLBPA informed each club in the MLB and the MiLB of its prohibition and demanded that the clubs abide by its determination, stating,

As you may be aware, the MLBPA has recently revoked its authorization of the Rimas Sports agency and its associated agents as certified Player Agents.  As a reminder, Article IV of the Major League Basic Agreement prohibits Clubs from negotiating a salary and/or Special Covenants to be included in a player's Uniform Player Contract ("UPC") with an agent who has not been certified to do so by the MLBPA.

Should your Club have a player who is represented by Rimas Sports, please communicate directly with the player on all matters related to the negotiation of a UPC and refrain from copying any Rimas Sports associated agent on any related correspondence.

(*See* **Exhibit G**, April 28, 2024, MLBPA Email to Clubs).[8]

57.     As a result of the Prohibition, clubs such as the Washington Nationals have refused to take calls or engage with Rimas Sports on ongoing marketing, sponsorship, and endorsement deals, even if they were unrelated to player contracts.   Similarly, brands like Topps have notified Rimas Sports that because of the MLBPA's prohibitions that they cannot speak with Rimas Sports marketing, endorsement, and sponsorship deals, such as one for Ronald Acuña.

58.     While Mr. Arroyo, Mr. Assad and Mr. Miranda intend to appeal the decisions against them individually in the April 10, 2024, Notice of Discipline, Rimas Sports is not (and cannot be) a party to the MLBPA's arbitration process.  As a result, Rimas Sports cannot appeal the MLBPA's decision affecting it, nor can Rimas Sports seek any relief or obtain any adequate remedy in that forum.

## IV.     The MLBPA Disciplinary Actions Have and Continue to Cause the Rimas Companies Irreparable Harm.

59.     The MLBPA's actions have caused and will continue to cause the Rimas Companies irreparable harm by:  (1) depriving Rimas Sports of the ability to hire or associate with any other MLBPA Certified Agents, effectively eliminating Rimas Sports as an agency; (2) causing Rimas Sports' prospective MLBPA certified agents to terminate negotiations with Rimas Sports by instructing the MLBPA certified agents to not associate with Rimas Sports; (3) interfering with the Rimas Companies' non-MLB employment agreements and specifically

---

[8]     The MLBPA email is inaccurate and confusing.  At the time of the email, Mr. Velazquez had received a notice of discipline, but he was not decertified.

third-party agreements for sponsorships, endorsements, and marketing deals with teams and third-parties; (4) injuring the Rimas Companies' goodwill, brands, and reputation in the entertainment and sports agency industries; and (5) interfering with the Rimas Companies' private right to contract with third-parties wholly unrelated to the MLB or the MLBPA by blanketly preventing any MLBPA certified agent from working with or associating with the Rimas Companies in any capacity.  These harms are real, imminent and have already been felt.

60.    Other players represented by Rimas Sports are in the middle of critical contract negotiations.  For example, Francisco Álvarez, a client of Mr. Arroyo who is currently engaged in ongoing negotiations on a contract extension with the New York Mets.  (*See, e.g.*, **Exhibit H**, affidavit of Francisco J. Álvarez, ¶¶ 5-11).[9]

61.    These actions have also interfered with other ongoing negotiations.  Atlanta Braves superstar outfielder Ronald Acuña Jr. (Mr. Acuña) was set to sign an agency and marketing agreement with Rimas Sports, yet he could only sign a marketing agreement, despite his desire to work with Rimas Sports to negotiate his contract and his marketing, sponsorship and endorsement deals.

62.    Many of Rimas Sports' clients want to stay with Rimas Sports. Similarly, several MLBPA certified agents want to work for or be associated with Rimas Sports.  After the MLBPA's notice of discipline was issued, 57 of the agency's clients entered the MLBPA no contact list as allowed under Regulations. (*See* Ex. B, § 5(B)(9), pp. 33).  Despite their names being put on the no contact list, which is distributed to all MLBPA Certified Agents, many clients have received numerous communications from other agents and agencies attempting to persuade them to terminate their agreements with Rimas Sports and retain the competing agent or agency, including

---

[9]    The Alvarez Affidavit will be filed under seal concurrently herewith.

Francisco Álvarez, among others. (*See, e.g.*, Ex. H, ¶ 14).  These players, without any indication or assurances from the MLBPA about Rimas Sports' future are left unsure as to their future representation.  As a result of the MLBPA's actions and blanket prohibition, multiple clients have left the agency.

63.     As set forth above, on April 28, 2024, the MLBPA sent a message to all thirty-two MLB clubs stating that any player represented by Rimas Sports should be directly contacted and exclude Rimas Sports and its agents.  (Ex. G (emphasis added)).

64.     These actions caused significant harm and confusion regarding the limitations placed on Rimas Sports and its agents' ability to negotiate private deals with clubs and third-parties unrelated to players' employment agreements with the clubs.  Indeed, on May 3, 2024, the Washington Nationals notified Rimas Sports that they could not discuss anything with the agency, including marketing, endorsements and sponsorship matters wholly unrelated to any player contracts.  Similarly, Topps notified Rimas Sports that because of the MLBPA's prohibitions that they could not speak with Rimas Sports concerning Ronald Acuña's marketing, endorsement and sponsorship deal.

65.     Moreover, Rimas Sports has identified additional certified agents who are willing to associate with Rimas and take over Mr. Arroyo's role as the lead agent.   (Ex. C, ¶¶ 2-5).  However, the MLBPA's overbroad disciplinary action prevents Rimas from associating with certified new agents, regardless of whether those agents have been subject to *any* disciplinary action or were associated with Rimas at the time of the alleged offending actions.

66.     To make matters worse, the MLBPA has prohibited Rimas Sports and any other MLBPA certified agent from facilitating the transfer of any player's PAD to another MLBPA certified agent, such as Mr. Velazquez, who is an MLBPA certified agent that Rimas Sports had

hired.  That is, even though the MLBPA only certifies individuals as Player Agents and, as such, the disciplinary procedure was not (and could not be) against the Rimas Companies, the MLBPA overtly and arbitrarily used that procedure to ban the Rimas Companies from any participation in the entire MLB and MiLB players' market.

67.    For example, Rimas Entertainment works extensively with Mr. Rossi to arrange and negotiate music and talent contracts, wholly unrelated to the game of baseball.  (Ex. C, ¶ 2). Through this close connection, Mr. Rossi has demonstrated an interest in working with Rimas Sports as a MLBPA certified agent, but the MLBPA has barred Mr. Rossi from working with Rimas Entertainment and with Rimas Sports, and even made it a condition of his ability to become a certified agent.  (Ex. C, ¶¶ 4-5).

68.    Again, by blanketly prohibiting *any* certified agents from affiliating with Rimas Sports, the MLBPA has effectively placed a death penalty sanction on Rimas Sports as an agency and prohibited Rimas Entertainment, which is not in the sports agency business and, thus, has never had a MLBPA Certified Agent or subject to the MLBPA Regulations, from contracting with baseball clients who may wish to secure branding, sponsorship or endorsement deals.

69.    Without immediate injunctive relief, the MLBPA's disciplinary actions will continue to cause Rimas Sports and Rimas Entertainment to suffer irreparable harm.

## COUNT I

### (Puerto Rico's General Tort Claim)

70.    Rimas Sports repeats and realleges each and every of the preceding paragraphs as if fully set forth herein.

71.    Rimas Sports has suffered damages as a result of the actions taken by the MLBPA, pursuant to Article 1536 of the Puerto Rico Civil Code of 2020, 31 PR Laws Ann. § 1080.

72.     The MLBPA has exceeded its authority under the NLRA by blanketly prohibiting any MLBPA certified agent from working with or associating with the Rimas Companies in any capacity.  This prohibition is an illegal, improper, and unprecedented sanction against the Rimas Companies that exceeds the MLBPA's statutory authority to regulate its collective bargaining activities.

73.     As a proximate result of the MLBPA's intentional and/or negligent acts, Rimas Sports faces the immediate and permanent loss of its ability to operate its business within the sports agency market and its accumulated goodwill and client base.

74.     The Rimas Companies face the immediate and permanent loss of their ability to negotiate and enter into private deals with clubs and third parties unrelated to players' employment agreements with the clubs, injuring the Rimas Companies' goodwill, brands, and reputation in the entertainment and sports agency industries.

75.     The MLBPA knew, or should have known, that such actions have caused and will continue to cause severe and agency-killing harm to the Rimas Companies.  In fact, the intended effect of the MLBPA's actions was precisely to eliminate the Rimas Companies from participating altogether in the sports agency market for MLB and MiLB players.

76.     To make matters worse, in addition to revoking one of its agents' certifications and threatening discipline on its only other certified agent (who has since left Rimas), the MLBPA has prohibited Rimas Sports and any other MLBPA certified agent from facilitating the transfer of any PAD to another MLBPA certified agent.  Even though the MLBPA only certifies individuals, the MLBPA has used its disciplinary procedure against the Rimas Companies and their affiliated entities, which are incapable of holding certifications.  These improper restrictions exceed the scope of the MLBPA's authority under the NLRA.  Further, in doing so, the MLBPA has overtly

and arbitrarily used its procedures to ban the Rimas Companies from participating in the sports agency market for baseball players.

77.     The immediate and unjustified application of this outright ban has caused and will continue to cause imminent and irreparable harm to Rimas Sports.  Not only will they suffer an incalculable loss of business, but they will also sustain irreversible harm to their goodwill in both the entertainment and sports agency industries.

<strong>COUNT II</strong>

<strong>(Tortious Interference with Contract)</strong>

78.     Rimas Sports repeats and realleges each and every of the preceding paragraphs as if fully set forth herein.

79.     Rimas Sports has contracts with numerous MLB, MiLB, and prospective players to represent them in contract negotiations for marketing, endorsement and sponsorship deals.

80.     The MLBPA knew of these contracts, and it knowingly and intentionally interfered with Rimas Sports' contracts.  The MLBPA knowingly interfered with the existing contracts by extending the disciplinary penalties against certain individuals to Rimas Sports and forcing those players to terminate their existing contracts with Rimas Sports.

81.     The MLBPA interfered with Rimas Sports' contracts for the improper purpose of preventing Rimas Sports from participating in the sports agency market for MLB and MiLB players, competing against other established agents and agencies, and barring Rimas Sports from expanding player's access to alternative revenue sources.

82.     The MLBPA has improperly interfered with Rimas Sports' endorsement, marketing, and sponsorship contracts and has prohibited persons holding MLBPA certifications from working for, affiliating with, or associating with Rimas Sports.  This interference attempts to regulate clients and markets outside the purview of the MLBPA's statutory authority under the

21

NLRA and its promulgated Regulations.  Rimas Sports has been harmed by the MLBPA's actions because several of its contracts with agents, players, clients and third parties have already been terminated as a result of the MLBPA's improper interference, and it is likely that more of the contracts will be terminated without judicial intervention.

### COUNT III

### (Declaratory Action)

83.    Rimas Sports repeats and realleges each and every of the preceding paragraphs as if fully set forth herein.

84.    Rimas Sports brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, which authorizes federal courts to declare the rights of interested parties in a case of actual controversy.

85.    There presently exists an actual and substantial controversy with respect to the MLBPA's actions against the appearing entities.  The MLBPA's authority to collectively bargain arises from the NLRA, and its Regulations promulgated pursuant to its authority granted it by the NLRA.  Nothing in the statutory text of the NLRA or the MLBPA's Regulations allows the union to prevent persons holding MLBPA certifications from representing MLB and MiLB players in the negotiation of sponsorship, endorsement, or marketing contracts, which are unrelated to those clients' MLB employment agreements.

86.    There presently exists an actual and substantial controversy with respect to the MLBPA's authority to prohibit persons holding MLBPA certifications from working for or associating with the Rimas Companies, or any future entity formed by the Rimas Companies.  Nothing in the text of the NLRA or the MLBPA's Regulations allows the MLBPA to blanketly prohibit persons holding MLBPA certifications from associating with companies not regulated by the MLBPA, such as the Rimas Companies.

87.     The parties require the Court to determine the scope of the MLBPA's authority pursuant to the NLRA, and whether the MLBPA can regulate industries outside of baseball and prevent agents and personnel within baseball from associating or working with non-regulated entities such as the Rimas Companies.

88.     Without a declaratory judgment, Rimas Sports is faced with immediate and perpetual uncertainty, insecurity with respect to their ability to continue to operate their businesses and continued financial harm.  A declaratory judgment by this court will minimize the danger of avoidable loss and the accrual of continued damages suffered by the Rimas Companies.

89.     Plaintiff respectfully requests this Court declare that the MLBPA lacks jurisdiction pursuant to the NLRA, or the statutory authority, to prohibit entities such as the Rimas Companies from contracting with certified agents who subsequently act as representatives for baseball players. Furthermore, it is requested that this Court declare that the MLBPA only has authority to discipline individuals who have been certified or seek certification, and not the separate and distinct legal entities that employ or contract with them.

90.     Plaintiff further requests this Court declare that the MLBPA lacks the statutory authority and jurisdiction under the NLRA to prohibit a certified Player Agent to associate or conduct business with the Rimas Companies, or to condition the certification of a Player Agent on refraining from conducting business with Rimas Companies.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Diamond Sports, LLC d/b/a Rimas Sports respectfully requests that this Court enter an order finding in Plaintiff's favor on Counts I-III and providing the following relief:

(a)     Issuing a temporary restraining order and preliminary injunction enjoining the MLBPA and its servants, agents, and employees, and all persons in active concert or

participation with them, from taking any action to prohibit persons who hold MLBPA certifications from working for, affiliating, or associating themselves with Diamond Sports LLC d/b/a Rimas Sports and/or Rimas Entertainment, LLC, or any entity owned by or affiliated with the Rimas Companies or their owners, until this Court has adjudicated Plaintiff's claims;

      (b)    Awarding Plaintiff money damages in an amount to be determined at a trial of this matter;

      (c)    Awarding Plaintiff pre- and post-judgment interest to the maximum extent permitted by law;

      (d)    Awarding Plaintiff's attorneys' fees and costs; and

      (e)    Awarding Plaintiff such other and further relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Diamond Sports, LLC d/b/a Rimas Sports respectfully demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  May 16, 2024                                    Respectfully Submitted,

**MARINI PIETRANTONI MUÑIZ LLC**                        **POLSINELLI PC**

*/s/ Mauricio O. Muñiz-Luciano*                         */s/ Leane K. Capps*
Mauricio O. Muñiz-Luciano,                              Leane K. Capps
USDC-PR No. 220914                                      Pro Hac Vice Forthcoming
                                                        2950 N. Harwood, Suite 2100
/s/ Claudia S. Delbrey-Ortiz                            Dallas, TX  75201
Claudia S. Delbrey Ortiz,                               T:  214.397.0030
USDC-PR No. 309207                                      lcapps@polsinelli.com
250 Ponce de León Avenue, Suite 900
San Juan, PR  00918
Office     787.705.2171                                 */s/ Mozianio S. Reliford, III*
Fax        787.936.7494                                 Mozianio S. Reliford, III
mmuniz@mpmlawpr.com                                     Pro Hac Vice Forthcoming
cdelbrey@mpmlawpr.com                                   501 Commerce Street, Suite 1300
                                                        Nashville, TN  37203
                                                        T:  615.259.1510
                                                        treliford@polsinelli.com
**POA LAW, LLC**

*/s/ Pedro R. Ortiz-Cortés*
Pedro R. Ortiz-Cortés,
USDC-PR No. 229907

/s/ Félix Colón-Serrano
Félix Colón Serrano,
USDC-PR No. 229812
Apartado 9009
Ponce, P.R.  00732-9009
Tel.:      787.841.7575                                 ***Counsel for Plaintiff Diamond Sports, LLC***
Fax:       787.841/0000                                 ***d/b/a Rimas Sports***
proc@poalaw.com
felix@poalaw.com

25

## VERIFICATION

The undersigned, Jonathan Miranda, certifies under penalty of perjury that the foregoing Verified Complaint is true and correct.

Executed this  15th  day of May, 2024.

_____
Jonathan Miranda

95042625.4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing will be served today upon the Major League Baseball Players Association, through its Associate General Counsel, Mr. Robert Guerra, via email (RGuerra@mlbpa.org), in compliance with Fed. R. Civ. P. 65(b)(1)(B).


*/s/ Mauricio O. Muñiz-Luciano*
Mauricio O. Muñiz-Luciano