# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| DIAMOND SPORTS, LLC d/b/a RIMAS SPORTS,<br><br>        Plaintiff,<br><br>     v.<br><br>MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION,<br><br>        Defendant. | Case No. 3:24-cv-01222 |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION'S MOTION FOR CONTEMPT**

Defendant Major League Baseball Players Association ("MLBPA") moves for civil contempt sanctions against Plaintiff Diamond Sports, LLC d/b/a Rimas Sports ("Rimas Sports" or "Plaintiff").

## INTRODUCTION

This Court unequivocally and repeatedly held that Rimas Sports is bound by the MLBPA Regulations Governing Player Agents ("MLBPA Regulations" or "Regulations) (attached hereto as Ex. A). *See* ECF No. 77 ("Order"). Accordingly, the Court compelled Rimas Sports to arbitrate this dispute "**under the arbitration clause contained in the Regulations**." *Id*. at 21 (emphasis added). But Plaintiff has chosen to defy the Order by filing an arbitration demand with the American Arbitration Association ("AAA") (*not* the MLBPA), invoking AAA Commercial Arbitration Rules (*not* the MLBPA Regulations and AAA Voluntary Labor Arbitration Rules), unilaterally seeking a commercial arbitrator (*not* jointly selecting a labor arbitrator from the National Academy of Arbitrators pursuant to the process set forth in the Regulations), and selecting Puerto Rico as the venue (*not* New York). *See* AAA Rimas Sports Commercial Arbitration Demand (attached hereto as Ex. B).[1] Piling onto its contemptuous behavior, Plaintiff falsely told the AAA that it was "▮▮▮▮▮" by the Court to file for arbitration as it did, and then told the AAA that it should ***reconsider*** "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" to its dispute with the MLBPA. August 20, 2024 Email from Mozianio S. Reliford, III to Gisell Silva ("August 20, 2024 Email") (attached hereto as Ex. C).[2] In other words, Plaintiff wants the AAA—pursuant to a procedure the MLBPA never agreed to—to ***reconsider*** what this Court already ordered.

---

[1] The AAA Rimas Sports Commercial Arbitration Demand will be filed under seal concurrently herewith.

[2] The August 20, 2024 Email will be filed under seal concurrently herewith.

1

This Court has *already*—clearly and decisively—ruled that Rimas Sports' claims are subject to the Regulations in three different ways. *See* Order at 18–21 (holding that Rimas Sports is bound by the Regulations under principles of contract, agency and estoppel). Just as the terms of the Court's Order could not be clearer and bind Rimas Sports, the Court held that "[t]he terms of the Regulations could not be clearer and bind Plaintiff." *Id.* at 17. And those Regulations expressly dictate that a grievance between an Agency and the MLBPA must "be filed with the MLBPA," must be subject to the terms of the Regulations (and the AAA Voluntary Labor Arbitration Rules "[t]o the extent deemed practicable" and not inconsistent with Section 7(B) of the Regulations), must be heard by a labor arbitrator from the National Academy of Arbitrators selected pursuant to a specified procedure, and must be conducted in New York. Regulations (Ex. A), §§ 7(B)(7), 7(B)(13), 7(B)(14), 7(B)(16).

Plaintiff's initial effort to evade its arbitration agreement and sue in this Court was arguably so frivolous as to violate Rule 11. Its latest act of defiance—now, not only defiance of the MLBPA Regulations, but this Court's Order—is nothing short of contemptuous. Rimas Sports has already forced the MLBPA to incur substantial litigation costs to hold Plaintiff to the arbitration agreement it made. Now Rimas Sports seeks to have the MLBPA do this all over again before an arbitrator and pursuant to arbitration procedures to which the MLBPA never agreed. Put differently, Rimas Sports seeks yet another bite at the apple as though this Court did not already dispose of any purported questions about whether Rimas Sports is bound by the Regulations and its arbitration procedures.

The MLBPA is mindful of the gravity of a contempt order, but Plaintiff's defiance calls for nothing less. The MLBPA respectfully requests that the Court (again) order Rimas Sports to comply with its arbitration agreement under the Regulations. Further, the MLBPA respectfully

requests that the Court sanction Rimas Sports in the amount of the MLBPA's reasonable attorney fees incurred for (i) filing this motion and (ii) seeking dismissal of Plaintiff's improperly filed AAA Commercial Arbitration Demand.

## BACKGROUND

I. **This Court Ordered Rimas Sports to Arbitrate Its Claims Under the MLBPA Arbitration Procedures**

On May 16, 2024, Rimas Sports sued the MLBPA in this Court to seek redress for the MLBPA disciplinary restrictions on various individuals associated with Plaintiff. *See* ECF No. 1 ("Complaint"); *see also* ECF No. 2 ("Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction"). On June 3, 2024, the MLBPA filed a motion seeking to compel Rimas Sports to arbitrate this dispute under the Regulations' arbitration procedures, and to stay the federal litigation pending the result of the MLPBA arbitration proceedings. *See* ECF No. 36 ("Motion to Compel"). Rimas Sports opposed the motion, arguing that the Regulations only apply to individuals and not Agencies. *See* ECF No. 56 ("Plaintiff's Opposition"); *see also* ECF No. 74 ("Plaintiff's Sur-Reply").

On August 15, 2024, the Court held that Rimas Sports had agreed to and was bound by the Regulations, and that the Regulations' arbitration provisions govern the claims that Plaintiff has asserted. *See* Order at 17 (holding that "[t]he terms of the Regulations could not be clearer and bind Plaintiff"); *id.* at 18 ("[A]ll Player Agents and their agencies are bound by the MLBPA's Regulations," and "[t]his includes submitting all claims between the parties to arbitration."). Rejecting Rimas Sports' argument that the Regulations only apply to individuals, the Court noted that the Regulations specify that "where one or more Player Agents own or conduct business as, or are employed by, a business entity, ***the term 'Player Agent' includes the firm or business entity they own or with which they are employed or associated***." Order at 12–13 (citing Regulations

3

(Ex. A), § 2(C)) (emphasis added). Rimas Sports' quote of the definition in its arbitration demand conveniently omits this part of the definition, just as it did in its briefing in this Court. *See* AAA Rimas Sports Commercial Arbitration Demand (Ex. B), ¶ 23; *see also* Plaintiff's Opposition at 5. The Court noted that the Regulations' definition of "Player Agent" includes Agencies. *See* Order at 16. The Court also found that Rimas Sports, was in the alternative, bound to arbitrate its dispute with the MLBPA under the Regulations pursuant to principles of agency and estoppel. *See* Order at 18–21.

In the words of the Court, the "Regulations govern the relationship between and among the [MLBPA] Player Agents, the Agencies, and the MLBPA." *Id*. at 4. Further, "the documents submitted with Plaintiff's Complaint show that Rimas Sports did indeed agree to be bound by the MLBPA's Regulations and its arbitration procedures." *Id*. at 16; *see also* Regulations (Ex. A), § 7 (any dispute "between a Player Agent . . . Agency . . . and the MLBPA" must be resolved "expeditiously and privately **by the impartial tribunals established in the[] Regulations**") (emphasis added).

The Regulations require that any grievance against the MLBPA "be filed with the MLBPA," not the AAA commercial dispute system. Regulations (Ex. A), § 7(B)(7). The Regulations also set forth the procedures for *jointly* selecting an arbitrator from the National Academy of Arbitrators through a process by which the parties alternately strike candidates from a list of five (*id*. § 7(B)(13)), not one party *unilaterally* seeking a AAA commercial arbitrator. The Regulations also state that the rules of procedure of the Voluntary Labor Arbitration Rules of the AAA apply "[t]o the extent deemed practicable by the Arbitrator and consistent with [the Regulations]," not AAA Commercial Arbitration Rules. *Id*. § 7(B)(16). And the Regulations state that any arbitration will be conducted in New York, not Puerto Rico. *Id*. § 7(B)(14).

4

Applying the above principles, the Court granted the MLBPA's Motion to Compel arbitration and ordered Rimas Sports "to binding arbitration pursuant to the rules of the American Arbitration Association and ***pursuant to the terms set forth in the Regulations***." Order at 23 (emphasis added).

**II.   Plaintiff Defies the Court's Order by Filing a Commercial Arbitration Demand With the AAA and Seeking to Relitigate Whether the Regulations Govern**

Rimas Sports has chosen to defy the Court's clear mandate. It filed an arbitration demand with the AAA, under Commercial Arbitration Rules, unilaterally seeking a commercial arbitrator, and selecting Puerto Rico as the venue. *See* AAA Rimas Sports Commercial Arbitration Demand (Ex. B); *see also* Rimas Sports Commercial Arbitration Demand Cover Sheet (attached hereto as Ex. D).[3] This was no technical error.[4] Plaintiff's intent is clear: it wants different arbitration rules (*e.g.*, different discovery rules), a different arbitrator, and a different venue than what it agreed to with the MLBPA and what the Court ordered. What's worse, Plaintiff falsely represented to the AAA that its filing was Court-ordered. *See* AAA Rimas Sports Commercial Arbitration Demand (Ex. B), ¶ 10 (""); *see also* August 20, 2024 Email (Ex. C) ("███████████████████████████████████████████████"). And not only did Plaintiff misrepresent the Court's Order, it seeks to undo it: "███████████████████████████████████████████████████████"

---

[3] The Rimas Sports Commercial Arbitration Demand Cover Sheet will be filed under seal concurrently herewith.

[4] Plaintiff can hardly feign ignorance about how to initiate an arbitration under the Regulations. Some of the same lawyers representing Rimas Sports in this case represent Messrs. Arroyo, Assad, and Miranda in their pending arbitration appeal against the MLBPA before Arbitrator Moscovitch, which was filed pursuant to the Regulations' arbitration procedures. *See* ECF No. 36-1, Declaration of Robert M. Guerra in Support of Motion to Compel, ¶¶ 6–7.

5

██████████████████████████████

███████████████████████████████████████████"

August 20, 2024 Email (Ex. C). It could not be clearer that Plaintiff, dissatisfied with the Court's Order, intends to treat it like a meaningless scrap of paper.

## ARGUMENT

**I.    Rimas Sports Violated This Court's Clear and Unambiguous Order Compelling It to File This Dispute in the MLBPA Grievance System**

"Compliance with an order from a federal judge is not optional." *Almeida-León v. WM Cap. Mgmt.*, 2021 WL 3575037, at *14 (D.P.R. Aug. 12, 2021). Where, as here, a party does not comply, "[c]ivil contempt may be imposed to compel compliance with a court order or to compensate a party harmed by non-compliance." *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005). The "court's authority to issue a contempt order derives from its inherent power to 'sanction…litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of [case] proceedings." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015) (quoting *United States v. Kouri-Perez*, 187 F.3d 1, 7 (1st Cir. 1999)). To prove civil contempt, a complainant must establish by clear and convincing evidence "(1) that the alleged contemnor had notice that he was 'within the order's ambit'; (2) that the order was clear and unambiguous; (3) that the alleged contemnor had the ability to comply; and (4) that the order was indeed violated." *Saccoccia*, 433 F.3d at 27 (internal citations omitted). Plaintiff's contempt could not be clearer or more convincing on each element.

*First*, it is incontrovertible that Rimas Sports had notice of the Order and that it was "within the [O]rder's ambit." Rimas Sports attached the Order as an exhibit to its AAA Commercial Arbitration Demand (en route to grossly misrepresenting it). *See* AAA Rimas Sports Commercial Arbitration Demand (Ex. B), ¶ 10; *id.* at Ex. J.

6

*Second*, the Order is clear and unambiguous. "For a party to be held in contempt, it must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion." *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991); *see also Drywall Tapers & Painters of Greater N.Y., Local 1974 v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989) ("In determining specificity, the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden."); *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir. 2002). No directive could have been more straight-forward than the Court's dictate to Plaintiff to "arbitrate its claims under the arbitration clause contained in the Regulations" (Order at 21), or that arbitration pursuant to the Regulations is the "exclusive method" for resolving disputes with the MLBPA. *Id*. at 16; *see also id*. at 20 ("[T]he Court finds Rimas Sports is also bound to the Regulations' arbitration clause through agency principles."); *id*. at 21 ("[T]he Court finds Rimas Sports must arbitrate its claims under the arbitration clause contained in the Regulations."). And the clarity of the Court's Order is apparent not just from its bottom-lines, but from the pages-upon-pages of analysis chronicling the myriad ways that Rimas Sports agreed to, and is bound by, the Regulations. *See generally*, Order. Contrary to Rimas Sports' misrepresentations to the AAA, nowhere did the Court compel Plaintiff to file a Commercial Arbitration Demand, with the AAA, before an arbitrator not contemplated by the Regulations, in Puerto Rico. What's "clear and unambiguous" is that the Order says no such thing.[5]

---

[5] While the MLBPA submits that Rimas Sports deliberately defied this Court's Order, to the extent Rimas Sports claims its interpretation of the Order was in "good faith," the law is firmly established in this Circuit that good faith is not a defense to civil contempt. *Goya Foods*, 290 F.3d at 30 (citing *Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 13 (1st Cir. 1996)).

*Third*, Rimas Sports' ability to comply with the Court's Order cannot be questioned. The MLBPA Regulations lay out the grievance procedure step-by-step. *See* Regulations (Ex. A), §§ 7(B)(6)–(23). Rimas Sports' counsel followed those steps in initiating their arbitral challenges to the Notice of Discipline against Messrs. Arroyo, Assad, and Miranda. *See* ECF No. 36-1, Declaration of Robert M. Guerra in Support of Motion to Compel, ¶¶ 6–7; ECF No. 38-1, TRO Hr'g Tr., 46:23–24 ("█████████████████████████████████████ █████"). Further, counsel for Rimas Sports has just this year filed a grievance under Section 7 on behalf of a different sports agency alleging similar tort claims and damages in the MLBPA grievance system. *See* ECF No. 70, Declaration of Robert M. Guerra in Support of Reply in Further Support of Motion to Compel, ¶ 7; *id*. at Ex. C. Simply put, Rimas Sports was amply capable of complying with the Court's Order.

*Finally*, Plaintiff's contempt for the Court's Order directing it to comply with the Regulations is equally clear. This meant filing an arbitration with the MLBPA (not the AAA), adhering to the arbitration procedures specified in the Regulations (and, by extension, the AAA Voluntary Labor procedures where applicable and not inconsistent with Section 7(B) of the Regulations), jointly selecting a labor arbitrator from the National Academy of Arbitrators pursuant to the Regulations' arbitrator selection process, and conducting the hearing in New York. Lest there be any doubt that Rimas Sports' defiance of the Court's Order is intentional, Rimas Sports has told the AAA that it will ask an arbitrator to *reconsider* this Court's ruling that the Regulations apply to Rimas Sports. *See* August 20, 2024 Email (Ex. C).

**II.     Rimas Sports Should Be Ordered to Comply With the Order and to Pay MLBPA's Reasonable Attorney Fees and Costs**

"In a civil contempt proceeding, a monetary sanction, assessed for the purpose of compensating the complainant for losses sustained by reason of the contemnor's acts, is within the

8

universe of possible sanctions." *Goya Foods*, 290 F.3d at 78. As such, "[i]t is customary in civil contempt proceedings for the Court to award to a successful complainant its attorneys' fees and related costs necessary to bring the contemnor's violations to the Court's attention." *Century ML-Cable Corp. v. Carrillo*, 43 F. Supp. 2d 176, 185 (D.P.R. 1998) (ordering payment of attorneys' fees for "the legal research and drafting necessary to bring this contempt motion").

Here, this Court should order Rimas Sports to immediately withdraw its contemptuous AAA Commercial Arbitration Demand. Then, if Plaintiff wishes to pursue its claims against the MLBPA, it should file with the MLBPA and pursuant to the Regulations, as the Court previously ordered.

Further, the Court should sanction Rimas Sports by awarding the MLBPA its reasonable attorney fees incurred in connection with (i) bringing this motion and (ii) defending against the improperly filed AAA arbitration. *See, e.g.*, *AngioDynamics*, 780 F.3d at 426 ("In addition to nudging a party to comply with a past court order, a district court may also utilize sanctions to compensate the complainant for harms suffered as a result of the contempt and to reinforce the court's own authority."). Rimas Sports apparently has a limitless litigation budget and will not stop thwarting this Court's Order or MLBPA Regulations absent appropriate sanctions. The MLBPA respectfully submits it should not be forced to endlessly waste resources fending off frivolous litigation and arbitration tactics. *See, e.g.*, *Hernández v. Casa Febus, Inc.*, 2022 U.S. Dist. LEXIS 248330, at *1 (D.P.R. Sep. 23, 2022) (ordering attorneys' fees "incurred in the preparation and prosecution of the motion[] for contempt"); *Rivera-Molina v. Casa La Roca, LLC*, 2021 WL 5769390, at *6 (D.P.R. Dec. 6, 2021) (same); *Almeida-León*, 2021 WL 3575037, at *20 (same).[6]

---

[6] Following the Court's ruling on this Motion, the MLBPA will submit a statement detailing the fees and costs it has been forced to incur as a result of Plaintiff's Contempt.

## CONCLUSION

For all of the foregoing reasons, the MLBPA respectfully requests that the Court grant its Motion for Contempt, ordering Rimas Sports to comply with the Order, and sanctioning Rimas Sports in the amount of the MLBPA's reasonable attorney fees and costs described herein.

Dated:  August 23, 2024

Respectfully submitted,

s/ Carlos A. Rodríguez-Vidal
Carlos A. Rodríguez-Vidal
USDC-PR No. 201213
GOLDMAN ANTONETTI & CORDOVA, LLC
P.O. Box 70364
San Juan, Puerto Rico 00936
Tel.: (787) 759-4117
Fax: (787) 767-9333
crodriguez-vidal@gaclaw.com


s/ Jeffrey L. Kessler
Jeffrey L. Kessler (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Jeffrey J. Amato (*pro hac vice*)
Sofia Arguello (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
dgreenspan@winston.com
jamato@winston.com
sarguello@winston.com

*Counsel for the Major League Baseball Players Association*